**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JERMAINE COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19 C 2346 |
| v. | ) | |
| | ) | Judge Charles P. Kocoras |
| CITY OF CHICAGO, RONALD WATTS, | ) | |
| PHILLIP CLINE, DEBRA KIRBY, BRIAN | ) | Magistrate Judge Sheila M. Finnegan |
| BOLTON, ROBERT GONZALEZ, ALVIN | ) | |
| JONES, MANUEL LEANO, KALLATT | ) | (This case is part of *In re: Watts* |
| MOHAMMED, DOUGLAS NICHOLS JR., | ) | *Coordinated Pretrial Proceedings*, Master |
| AND ELSWORTH SMITH JR., | ) | Docket Case No. 19 C 1717) |
| | ) | |
| Defendants. | ) | |

## DEFENDANT DEBRA KIRBY'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant, Debra Kirby, by her attorney, Terrence M. Burns of Reiter Burns LLP, for her

answer to Plaintiff's Complaint, states:

1.     This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court

is invoked pursuant to 28 U.S.C. §§ 1343 and 1367.

**ANSWER**:    This Defendant admits plaintiff's complaint purports to assert claims

pursuant to federal statutes and Illinois law that seek to invoke the jurisdiction of this Court. This

Defendant denies liability to plaintiff for any and all claims asserted in the complaint.

### I. Parties

2.     Plaintiff Jermaine Coleman is a resident of the Northern District of Illinois.

**ANSWER**:    This Defendant lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in paragraph 2.

3.     Defendant City of Chicago is an Illinois municipal corporation.

**ANSWER**:    This Defendant admits on information and belief the City of Chicago is a

municipal corporation incorporated under the laws of the State of Illinois.

1

4.     Defendants Ronald Watts, Brian Bolton, Robert Gonzalez, Alvin Jones, Manuel Leano, Kallatt Mohammed, Douglas Nichols Jr., and Elsworth Smith Jr. (the "individual officer defendants") were at all relevant times acting under color of their offices as Chicago police officers. Plaintiff sues the individual officer defendants in their individual capacities.

**ANSWER**:     The allegations contained in paragraph 4 consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, this Defendant denies that criminal misconduct such as that alleged in plaintiff's complaint is the type of conduct that is within the reasonably anticipated job duties of a Chicago Police Department ("CPD") officer or would further a legitimate law enforcement purpose. This Defendant admits on information and belief Defendants Watts and Mohammed were employed as police officers by CPD at some of the time periods contemplated in the complaint. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 4.

5.     Defendant Philip Cline was at all relevant times Superintendent of the Chicago Police Department. Plaintiff sues Cline in his individual capacity.

**ANSWER**:     This Defendant admits on information and belief Mr. Cline served as Superintendent of Police of the CPD from approximately November 2003 to April 2007. This Defendant admits the complaint purports to sue Mr. Cline in his individual capacity. This Defendant denies any remaining allegations in paragraph 5 inconsistent with the foregoing.

6.     Defendant Debra Kirby was at all relevant times the Assistant Deputy Superintendent of the Chicago Police Department, acting as head of the Chicago Police Department Internal Affairs Division. Plaintiff sues Kirby in her individual capacity.

**ANSWER**:     This Defendant admits she served as Assistant Deputy Superintendent of the CPD in charge of its Internal Affairs Division ("IAD") from approximately July 2004 through March 2008. This Defendant admits the complaint purports to sue her in her individual capacity. This Defendant denies any remaining allegations in paragraph 6 inconsistent with the foregoing.

## II. Overview

7.      Plaintiff Coleman is one of many victims of the criminal enterprise run by convicted felon and former Chicago Police Sergeant Ronald Watts and his tactical team at the Ida B. Wells Homes in the 2000's.

**ANSWER**:   This Defendant admits Ronald Watts is a convicted felon and former sergeant in the CPD. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 7.

8.      As of the date of filing, more than fifty individuals who were framed by the Watts Gang have had their convictions vacated by the Circuit Court of Cook County.

**ANSWER**:   This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 8.

9.      Several of these other victims of the Watts Gang are currently prosecuting federal lawsuits. Pursuant to an order of the Court's Executive Committee dated July 12, 2018, these cases have been coordinated for pretrial proceedings under the caption, *In Re: Watts Coordinated Pretrial Proceedings,* 19-cv-01717.

**ANSWER**:   This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. This Defendant admits on information and belief the existence of *In re: Watts Coordinated Pretrial Proceedings*, Master Docket Case No. 19 C 1717, in which several federal lawsuits against Watts and others have been coordinated for pretrial proceedings. This Defendant denies liability to each of the plaintiffs in the federal lawsuits that are part of the coordinated proceedings.

10.     The Executive Committee's Order states that additional cases, such as this one, filed with similar claims and the same defendants shall be part of these coordinated pretrial proceedings.

**ANSWER**:    This Defendant admits on information and belief this lawsuit is part of the coordinated proceedings in *In re: Watts Coordinated Pretrial Proceedings*, Master Docket Case No. 19 C 1717. This Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 10.

11.    The Watts Gang of officers engaged in robbery and extortion, used excessive force, planted evidence, fabricated evidence, and manufactured false charges.

**ANSWER**:    This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang of officers," and she therefore makes no further response to the allegations in this paragraph incorporating that term. This Defendant admits on information and belief Defendants Watts and Mohammed were arrested, prosecuted, and convicted for federal crimes. This Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 11.

12.    High ranking officials within the Chicago Police Department were aware of the Watts Gang's criminal enterprise, but failed to take any action to stop it.

**ANSWER**:    This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. Further responding, this Defendant lacks knowledge or information as to the unnamed and unidentified "high ranking officials" vaguely referenced in this paragraph. To the extent directed against her, this Defendant denies the allegations of paragraph 12.

13.    The Chicago Police Department's official policies or customs of failing to discipline, supervise, and control its officers, as well as its "code of silence," were a proximate cause of the Watts Gang's criminal enterprise.

**ANSWER**:    This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term

"Watts Gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. This Defendant denies knowledge of the "official policies and customs" of the CPD alleged in this paragraph, and she denies any "official policies or customs" of the CPD were a proximate cause of Defendant Watts' criminal activities.

14.     Watts Gang officers arrested Coleman without probable cause, fabricated evidence against him, and framed him for a drug offense for which he was imprisoned for about one-and-a-half years.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. This Defendant lacks knowledge or information of the alleged misconduct involving plaintiff as asserted in the complaint against the Defendant Officers, and she is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 14.

15.     Based on the powerful evidence that has become known about the Watts Gang's nearly decade-long criminal enterprise, the Circuit Court of Cook County has vacated plaintiff's conviction and granted him a Certificate of Innocence.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 15.

16.     Coleman brings this lawsuit to secure a remedy for his illegal incarceration, which was caused by: the Watts Gang officers, the failure of high-ranking officials within the Chicago Police Department to stop the Watts Gang, the code of silence within the Chicago Police Department, and the Chicago Police Department's defective discipline policy.

**ANSWER**:   This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. This Defendant admits plaintiff's complaint seeks damages, but she denies liability to plaintiff for any of the claims and/or damages asserted in the complaint. This Defendant denies the remaining allegations contained in paragraph 16.

### III. False Arrest and Illegal Prosecution of Plaintiff[1]

17.     On May 3, 2006, plaintiff was arrested by the individual officer defendants outside of a building at the Ida B. Wells Homes.

**ANSWER**:   This Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17.

18.     At the time of plaintiff's arrest:

  a.  None of the individual officer defendants had a warrant authorizing the arrest of plaintiff;

  b.  None of the individual officer defendants believed that a warrant had been issued authorizing the arrest of plaintiff;

  c.  None of the individual officer defendants had observed plaintiff commit any offense; and

  d.  None of the individual officer defendants had received information from any source that plaintiff had committed an offense.

**ANSWER**:   This Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18.

19.     After arresting plaintiff, the individual officer defendants conspired, confederated, and agreed to fabricate a false story in an attempt to justify the unlawful arrest, to cover-up their wrongdoing, and to cause plaintiff to be wrongfully detained and prosecuted.

---

[1] Although they do not conform with pleading rules, to the extent that titles used throughout the complaint require an answer, Ms. Kirby denies on information and belief all wrongful conduct alleged in these titles.

**ANSWER**: This Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19.

20. The false story fabricated by the individual officer defendants included their concocted claim that they saw plaintiff selling drugs before they approached him and their false claim that plaintiff had a bag containing drugs in his possession when they arrested him.

**ANSWER**: This Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20.

21. The acts of the individual officer defendants in furtherance of their scheme to frame plaintiff included the following:

    a. One or more of the individual officer defendants prepared police reports containing the false story, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiff's rights;

    b. One or more of the individual officer defendants attested to the false story through the official police reports, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiff's rights;

    c. Defendant Watts formally approved one or more of the official police reports, knowing that the story set out therein was false; and

    d. One or more of the individual officer defendants communicated the false story to prosecutors, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiff's rights.

**ANSWER**: This Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21.

22. The wrongful acts of the individual officer defendants were performed with knowledge that the acts would cause plaintiff to be held in custody and falsely prosecuted for an offense that had never occurred.

**ANSWER**: This Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22.

23. Plaintiff was charged with a drug offense because of the wrongful acts of the individual officer defendants.

**ANSWER**: This Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23.

24.     Plaintiff knew that it would be impossible to prove that the individual officers had concocted the charges.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24.

25.     Accordingly, even though he was innocent, plaintiff pleaded guilty to a drug offense on June 29, 2006, and received a sentence of four years imprisonment.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.

26.     Plaintiff was deprived of liberty during his incarceration because of the above-described wrongful acts of the individual officer defendants.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26.

27.     Plaintiff was continuously in custody from his arrest on May 3, 2006 until he was released on parole ("mandatory supervised release") from the Illinois Department of Corrections on November 1, 2007.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27.

### IV. Plaintiff's Exoneration

28.     Plaintiff challenged his conviction after he learned that federal prosecutors and lawyers for other wrongfully convicted individuals had discovered the Watts Gang's criminal enterprise.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 28.

29.     On February 13, 2019, the Circuit Court of Cook County granted the State's motion to set aside plaintiff's conviction; immediately thereafter, the Court granted the State's request to *nolle prosequi* the case.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29.

30.     On March 18, 2019, the Circuit Court of Cook County granted plaintiff a Certificate of Innocence.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30.

**V. Plaintiff's Arrest and Prosecution Were Part of a Long-Running Pattern Known to High Ranking Officials Within the Chicago Police Department**

31.     Before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, the Chicago Police Department had received many civilian complaints that defendant Watts and the Watts Gang were engaging in robbery, extortion, the use of excessive force, planting evidence, fabricating evidence, and manufacturing false charges against persons at the Ida B. Wells Homes.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. This Defendant admits the CPD received information alleging Defendant Watts was engaging in criminal misconduct against drug dealers at the Ida B. Wells housing complex, and that CPD's IAD participated with federal authorities in a joint federally-led investigation of those allegations. This Defendant denies any remaining allegations in paragraph 31 inconsistent with the foregoing.

32.     Criminal investigators corroborated these civilian complaints with information they obtained from multiple cooperating witnesses.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the "criminal investigators" to whom plaintiff is referring. To the extent the allegations of

this paragraph are intended to refer to "investigators" involved in the federally-led investigation in which CPD's IAD participated, this Defendant admits on information and belief the CPD and other law enforcement investigators had received information from individuals who were alleging Defendant Watts was engaging in criminal misconduct at the Ida B. Wells housing complex. This Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 32.

33.　　Before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, defendants Cline and Kirby knew about the above-described credible allegations of serious wrongdoing by Watts and the Watts Gang and knew that criminal investigators had corroborated these allegations.

**ANSWER**:　　This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined terms "Watts Gang" and "criminal investigators," and she therefore makes no further response to the allegations in this paragraph incorporating those terms. This Defendant admits the CPD received information alleging Defendant Watts was engaging in criminal misconduct against drug dealers at the Ida B. Wells housing complex, and that CPD's IAD participated with federal authorities in a joint federally-led investigation of those allegations. This Defendant denies any remaining allegations contained in paragraph 33 inconsistent with the foregoing.

34.　　Defendants Cline and Kirby also knew, before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, that, absent intervention by the Chicago Police Department, Watts and his gang would continue to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges.

**ANSWER**:　　This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. This Defendant admits the CPD received information alleging Defendant Watts was engaging in criminal misconduct against drug dealers at the Ida B. Wells housing

10

complex, and that CPD's IAD participated with federal authorities in a joint federally-led investigation of those allegations. This Defendant denies the remaining allegations contained in paragraph 34.

35.     The Internal Affairs Division of the Chicago Police knew about the lawlessness of Watts and his gang by 2004.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. This Defendant admits on information and belief that in 2004, the CPD received information alleging Defendant Watts may have been engaging in criminal misconduct involving drug dealers at the Ida B. Wells housing complex, and CPD's IAD participated with federal authorities in a joint federally-led investigation of those allegations. This Defendant denies any remaining allegations in paragraph 35 inconsistent with the foregoing.

36.     Defendants Cline and Kirby had the power and the opportunity to prevent Watts and his gang from continuing to engage in the above-described wrongdoing.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent the allegations of this paragraph are directed against her, this Defendant admits the CPD's IAD participated with federal authorities in a joint federally-led investigation of allegations that Watts, and later Mohammed, were engaging in criminal activity against drug dealers at the Ida B. Wells housing complex. To the extent this paragraph alleges or infers Ms. Kirby or Mr. Cline was obligated to take actions that would have interfered with, obstructed, and/or exposed a pending confidential investigation, those allegations are denied. This Defendant denies any remaining allegations in paragraph 36 directed against her.

37.     Defendants Cline and Kirby deliberately chose to turn a blind eye to the wrongdoing by Watts and his gang.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent directed against her, this Defendant denies the remaining allegations contained in paragraph 37.

38.     As a direct and proximate result of the deliberate indifference of defendants Cline and Kirby, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent directed against her, this Defendant denies the remaining allegations contained in paragraph 38.

## VI. Official Policies and Customs of the Chicago Police Department Were the Moving Force Behind the Defendants Misconduct

39.     At all relevant times, the Chicago Police Department maintained official policies and customs that facilitated, encouraged, and condoned the Defendants' misconduct.

**ANSWER**:     This Defendant denies on information and belief the allegations in paragraph 39.

### A. Failure to Discipline

40.     At all relevant times, the Chicago Police Department maintained a policy or custom of failing to discipline, supervise, and control its officers. By maintaining this policy or custom, the City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

**ANSWER**:     This Defendant denies the allegations contained in paragraph 40.

41.     Before plaintiff's arrest, policymakers for the City of Chicago knew that the Chicago Police Department's policies or customs for disciplining, supervising, and controlling its officers were inadequate and caused police misconduct.

**ANSWER**:     This Defendant denies the allegations as phrased in paragraph 41.

42.     Despite their knowledge of the City's failed policies and customs for disciplining, supervising, and controlling its officers, the policymakers failed to take action to remedy these problems.

**ANSWER**:     This Defendant denies the allegations as phrased in paragraph 42.

43.     Before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, the individual officer defendants had been the subject of numerous formal complaints of official misconduct.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. This Defendant lacks knowledge or information of the alleged misconduct involving plaintiff as asserted in the complaint against the Defendant Officers, and she is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 43.

44.     As a direct and proximate result of the Chicago Police Department's inadequate policies or customs for disciplining, supervising, and controlling its officers and the policymakers' failure to address these problems, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. This Defendant denies the remaining allegations contained in paragraph 44.

**B. Code of Silence**

45.     At all relevant times, the Chicago Police Department maintained a "code of silence" that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be severely penalized by the Department.

**ANSWER**:     This Defendant denies on information and belief that a "code of silence" as described in the complaint was a pervasive or widespread practice within the CPD, denies the remaining allegations in this paragraph, and further states such a "code of silence" is directly contrary to the rules, policies, and training of the CPD.

46.     At all relevant times, police officers were trained at the Chicago Police Academy not to break the code of silence. Officers were instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

**ANSWER**:     This Defendant denies on information and belief the allegations contained in paragraph 46, and further states that a "code of silence" as described is directly contrary to the rules, policies, and training of the CPD.

47.     This "code of silence" facilitated, encouraged, and enabled the individual officer defendants to engage in egregious misconduct for many years, knowing that their fellow officers would cover for them and help conceal their widespread wrongdoing.

**ANSWER**:     This Defendant denies on information and belief the allegations contained in paragraph 47, and further states that a "code of silence" as described is directly contrary to the rules, policies, and training of the CPD.

48.     Consistent with this "code of silence," the few people within the Chicago Police Department who stood up to Watts and his gang or who attempted to report their misconduct were either ignored or punished, and the Watts Gang was thereby able to engage in misconduct with impunity.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined terms "Watts Gang" or "Watts and his gang," and she therefore makes no further response to the

allegations in this paragraph incorporating either term. This Defendant denies on information and belief the remaining allegations contained in paragraph 48.

49.     Watts and his gang are not the first Chicago police officers whom the City of Chicago allowed to abuse citizens with impunity while the City turned a blind eye.

**ANSWER**:     This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. This Defendant denies on information and belief the remaining allegations as phrased in paragraph 49.

50.     One example of this widespread practice is Chicago police officer Jerome Finnigan, who was convicted and sentenced on federal criminal charges in 2011. One of the charges against Finnigan involved his attempt to hire a hitman to kill a police officer whom Finnigan believed would be a witness against him.

**ANSWER**:     This Defendant admits on information and belief former police officer Jerome Finnigan was convicted and sentenced on criminal charges, and that one of the charges against Finnigan was based on his alleged attempt to hire someone to kill a police officer whom Finnigan understood might be a potential witness against him in criminal proceedings. This Defendant denies the CPD "turned a blind eye" to Finnigan's misconduct. This Defendant denies the remaining allegations contained in paragraph 50.

51.     Finnigan was part of a group of officers in the Defendant City's Special Operations Section who carried out robberies, home invasions, unlawful searches and seizures, and other crimes.

**ANSWER**:     This Defendant admits Finnigan and other members of the CPD's Special Operations Section were convicted of various criminal charges. This Defendant denies any remaining allegations in paragraph 51 inconsistent with the foregoing.

52.     Finnigan and his crew engaged in their misconduct at around the same time that plaintiff was subjected to the abuses described above.

**ANSWER**: This Defendant lacks knowledge or information sufficient to form a belief as to identities of the individuals plaintiff alleges to be part of Finnigan's "crew." To the extent a further response is necessary, this Defendant denies knowledge or information as to whether "plaintiff was subjected to" the misconduct alleged in the complaint. This Defendant denies any remaining allegations contained in paragraph 52.

53. Finnigan, like the defendants in this case, had been the subject of many formal complaints of misconduct.

**ANSWER**: This Defendant is without knowledge or information sufficient to form a belief as to the meaning of the vague and argumentative term "many." This Defendant admits on information and belief Finnigan had been the subject of complaints of misconduct over the course of his career. This Defendant is without knowledge or information sufficient to form a belief as to the disciplinary histories of Finnegan or the Defendant Officers. This Defendant denies any remaining allegations in paragraph 53 inconsistent with the foregoing.

54. Finnigan revealed at his criminal sentencing hearing in 2011, "You know, my bosses knew what I was doing out there, and it went on and on. And this wasn't the exception to the rule. This was the rule."

**ANSWER**: This Defendant denies knowledge or information of the truth or credibility of any statements made by Finnigan at his criminal sentencing.

55. Defendants Watts and Mohammed were criminally charged in federal court in February 2012 after shaking down a federal informant they believed was a drug dealer.

**ANSWER**: This Defendant admits on information and belief the allegations contained in paragraph 55.

56. Defendant Mohammed pleaded guilty in 2012.

**ANSWER**: This Defendant admits on information and belief the allegations contained in paragraph 56.

57. Defendant Watts pleaded guilty in 2013.

16

**ANSWER**: This Defendant admits on information and belief the allegations contained

in paragraph 57.

58. In the case of *Obrycka v. City of Chicago et al.,* No. 07-cv-2372 (N.D. Ill.), a federal jury found that as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

**ANSWER**: This Defendant is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 58.

59. In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

**ANSWER**: This Defendant is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 59.

60. In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

**ANSWER**: This Defendant is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 60.

61. In an official government report issued in January 2017, the United States Department of Justice found that "a code of silence exists, and officers and community members know it."

**ANSWER**: This Defendant is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 61.

62. On March 29, 2019, Chicago Police Superintendent Eddie Johnson publicly acknowledged the code of silence, stating that some Chicago police officers "look the other way" when they observe misconduct by other Chicago police officers.

**ANSWER**: This Defendant is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 62.

63. The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, Superintendent Johnson, the Task Force, and the Department of

Justice was also in place when plaintiff suffered the wrongful arrest, detention, and prosecution described above.

**ANSWER**: This paragraph consists of a legal conclusion to which no answer is required. To the extent a response is deemed necessary, this Defendant denies knowledge that a "code of silence" was a pervasive or widespread practice within the CPD, and she therefore denies the allegations as phrased in paragraph 63. This Defendant further states that a "code of silence" as described in the complaint is directly contrary to the rules, policies, and training of the CPD.

64.    As a direct and proximate result of the City's code of silence, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

**ANSWER**: This Defendant lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and she therefore makes no further response to the allegations in this paragraph incorporating that term. This Defendant denies the remaining allegations contained in paragraph 64.

## VII. Claims[2]

65.    As a result of the foregoing, all of the defendants caused plaintiff to be deprived of rights secured by the Fourth and Fourteenth Amendments.

**ANSWER**: This Defendant makes no answer or response to the allegations of paragraph 65 to the extent directed against other defendants. As directed against her, she denies the allegations contained in paragraph 65.

66.    As a supplemental state law claim against defendant City of Chicago only: as a result of the foregoing, plaintiff was subjected to a malicious prosecution under Illinois law.

---

[2] In accordance with the Joint Stipulation filed in *In re: Watts Coordinated Pretrial Proceedings*, Master Docket Case No. 19 C 1717 (Dkt. #186), this Defendant adopts and incorporates as part of her responsive pleadings in this matter the representative Joint Motion to Dismiss Certain Claims in Flaxman Plaintiffs' Complaints (Dkt. #173 on the Master Docket), to the extent applicable to the claims in this complaint.

**ANSWER**: This Defendant makes no answer to the allegations contained in paragraph 66, which are not directed against her. This Defendant denies committing any tort against plaintiff.

67. Plaintiff hereby demands trial by jury.

**ANSWER**: This Defendant admits plaintiff's complaint includes a jury demand.

WHEREFORE, Defendant, Debra Kirby, denies that plaintiff is entitled to any judgment whatsoever as against her, and she requests that this Court enter judgment in her favor and against plaintiff on all claims in plaintiff's complaint, and for her costs and such further relief as this Court deems just.

## <u>AFFIRMATIVE DEFENSES</u>

Defendant, Debra Kirby, through counsel, without prejudice to her denials and all other statements in her answer and elsewhere, for her affirmative defenses to plaintiff's complaint, states:

1. At all times relevant to the allegations in the complaint, Ms. Kirby was a public official exercising discretion in the course of her duties, and she is entitled to qualified immunity.

2. Ms. Kirby is entitled to qualified immunity for her conduct because it was not clearly established that her actions violated plaintiff's constitutional rights.

3. Plaintiff's claims in the complaint are barred by the applicable statutes of limitations.

4. Plaintiff's claims are barred by the doctrines of *res judicata* and collateral estoppel.

5. An award of punitive damages would deprive Ms. Kirby of due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution where liability for punitive damages has not been proven beyond a reasonable doubt or at least by clear and convincing evidence, or where the award of punitive damages is disproportionate to actual damages.

6.    Ms. Kirby is not liable for any of plaintiff's claims because a public employee acting within the scope of her employment is not liable for an injury caused by the act or omission of another person. 745 ILCS 10/2-202.

7.    To the extent plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by plaintiff must be reduced by application of the principle that a plaintiff has a duty to mitigate those damages.

8.    To the extent any injuries or damages claimed by plaintiff was proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of plaintiff as reflected in the public record, including but not limited to, police reports and court records, any verdict or judgment obtained by plaintiff must be reduced by an amount commensurate with the degree of fault attributed to plaintiff by the jury in this case.

9.    Any recovery of damages by plaintiff against Ms. Kirby is barred by the doctrine of *in pari delicto*.

10.    Plaintiff's complaint fails to state claims for relief against Ms. Kirby that are plausible, specifically:

   a.    Plaintiff fails to state a fabricated evidence-based due process claim because the allegedly fabricated evidence was not introduced against him at trial and did not cause his conviction;

   b.    Even if otherwise actionable, plaintiff's guilty plea defeats his fabrication claim;

   c.    To the extent plaintiff asserts a Fourteenth Amendment due process claim based on any pre-trial deprivation of liberty or attempts a federal malicious prosecution claim, those claims are not actionable as a matter of law; and,

   d.    Plaintiff's Fourth Amendment claim for detention without probable cause and state law malicious prosecution claim are time-barred.

In addition to the foregoing, Ms. Kirby had no personal involvement in the alleged unconstitutional conduct underlying plaintiff's claims.

## **JURY DEMAND**

Defendant Debra Kirby respectfully requests a trial by jury.

Dated: January 17, 2022                              Respectfully submitted,

                                                                          By: *s/ Paul A. Michalik*_____
                                                                          Special Assistant Corporation Counsel

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Katherine C. Morrison
Daniel J. Burns
Dhaviella N. Harris
Reiter Burns LLP
311 South Wacker Dr., Suite 5200
Chicago, IL 60606
(312) 982-0090 (telephone)
(312) 429-0644 (facsimile)

*Attorneys for Defendant Debra Kirby*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on **January 17, 2022**, I electronically filed the foregoing **Defendant Debra Kirby's Answer to Plaintiff's Complaint** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all counsel of record via the Court's CM/ECF system.


*s/ Paul A. Michalik*